## LOGAN GAS CO v GLASGO

Ohio Appeals, 5th Dist Ashland Co
No 187. Decided Nov., 1930

J. F. Henderson, Ashland and C. L. Post, Columbus, for Gas Co.

D. Homer Graven, Loudenville and F. O. Levering, Mt. Vernon, for Glasgo.

ROBERTS, J. (7th Dist) sitting with LEMERT, J.

**LEMERT, J.**

The law governing this case is so well settled that a citation of numerous authorities in this Opinion we deem unnecessary.

It is well recognized that there are three rights with reference to water, water courses, etc.—namely, surface streams, underground streams and percolating water: so that in the case at bar we are faced at the very outset with the proposition as to in what classification does the case at bar fall, and at the very outset of this case it is well to note that in the case at bar this action is not one between adjacent land owners but that a third party has intervened and commenced development for natural gas. It is not a case of making use of water in the same sense as though it were an action between adjacent or abutting land owners.

This cause has been well briefed by counsel and argued at length orally. In the briefs submitted by plaintiff in error we note that many authorities are cited, but an examination of the same reveal that they have to do with percolating waters and are not as to underground streams. It is well settled in this state that the obstruction or diversion of an underground stream, flowing in a definite channel, is an actionable injury to those whose use of the water is thereby impaired, and that a land owner whose supply of underground water has been cut out by one who does not own the land in which the act was done, may have an action for the resulting loss and injuries done to wells or springs by means of obstruction.

Page 631, 10 North Eastern, 796,

50 American Decisions, 709,

144 Massachusetts, 139.

An examination of the above authorities will disclose the difference in rights as between the owner of the fee and one who does not own the fee.

We have carefully examined the record in this case and from an examination and study thereof there can not be any doubt but what the drilling of the well by the plaintiff in error tapped an underground stream of water which fed the spring of defendant in error. At any rate, that was a question for the jury to decide, and we find that the record warrants such a finding by the jury. The spudding of the well by plaintiff in error, the effect of such action immediately upon the spring of defendant in error, and within one week

the spring of defendant in error becoming dry and remaining dry ever since and at all times, as shown by the testimony of witnesses who were familiar with the spring on defendant in error's land and had been for a long number of years, that the said spring was a never failing and a continuous flowing spring, we believe, from the record, were proven facts and not mere inferences.

It is with great difficulty that underground streams of water are located, for the reason that an underground stream is hidden from view, and just what is necessary to establish that question is somewhat difficult to determine.

These facts having been submitted to the jury, under proper instructions from the trial court, these questions need not here necessarily worry or disturb a reviewing court.

In the case of **Castalia Trout Club Company vs. Castalia Sporting Club, et al.,** a well considered case in the **8 Circuit Decisions,** at page **693,** it is held that a party can not materially divert water from a natural watercourse, whether that natural watercourse is found above or below the surface of the earth, to the substantial injury or damage of another; and further holds that waters delivered upon the premises of an adjoining proprietor must be delivered in substantially the same condition, both as to quantity and quality, as the water flows through the natural watercourse.

With the facts before us, as disclosed by the record in the case at bar, geology tells us that the water that was flowing through the lands of the Firestone farm, or that leased by plaintiff in error, was flowing from a channel or stream of water underneath the surface of the earth, and that it was not flowing by percolation, and that the acts of the plaintiff in error in digging the well, as disclosed by the record, diverted or stopped the flow of the water in its natural course. This was done, as shown by the record, by the spudding in of a well, as aforesaid, and the feeder for the spring on plaintiff in error's farm was destroyed.

The only difference found between a surface stream and a subterranean stream is, with the surface stream the natural watercourse is clearly defined, whence it comes and whither it goes; with the subterranean stream it is not so easily ascertained; so that it has been repeatedly held by courts of law elsewhere in this state and other jurisdictions, that no property

rights attach to water upon the premises of another produced by percolation, and the reason is, no one can, as to the water thus produced, tell whence it comes and whither it goes—it is here today and gone tomorrow—but when it can be ascertained whence it comes and whither it goes, it becomes a known and defined stream and as such is governed by the law that controls surface natural watercourses.

This case was tried in the Court below to a jury and the law applicable to the case was given by the trial judge in his charge to the jury. We also note that counsel for plaintiff in error at the conclusion of the court's charge asked for some additional charges, which were given; which charges cover all of the questions that counsel for plaintiff in error are raising in this court, and these questions, being questions of fact, were determined by the jury, and the jury having determined those facts, we are of the opinion and find and hold that the finding and judgment of the court below was correct and the finding and judgment of said court will be and the same hereby is affirmed. Exceptions may be noted.

Roberts, J, concurs.